# EXHIBIT B

E-Filed for Record
4/19/2022 4:22 PM
Sherry Dushane, District Clerk
Andrews County, TX
By: Sherry Dushane

CAUSE NO. 22,575

| | | |
|---|---|---|
| Jerry Clayton Gift, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| *v.* | § | 109TH Judicial District Court |
| | § | |
| Anadarko Petroleum Corporation Change of Control Severance Plan, Occidental Petroleum Corporation, and Anadarko Petroleum Corporation Health and Welfare Benefits Administrative Committee, | § § § § § § | of Andrews County, Texas |
| | § | |
| *Defendants.* | § | |

# PLAINTIFF JERRY CLAYTON GIFT'S ORIGINAL PETITION

## DISCOVERY PLAN

1. Plaintiff Jerry Clayton Gift intends discovery to be conducted under Level 3 of Texas Rule of Civil Procedure 190.

## INTRODUCTION

2. This is a civil action under the Employee Retirement Income Security Act of 1974 and amendments thereto ("ERISA"). Jerry brings his claims pursuant to 29 U.S.C. § 1132(a)(1)(B) to recover benefits due to him under a severance plan and to enforce his rights under that plan. State and federal courts have concurrent jurisdiction over the claims asserted herein.





## PARTIES

3. Defendant Anadarko Petroleum Corporation Change of Control Severance Plan[1] (the "plan") is an employee welfare benefit plan within the meaning of 29 U.S.C. § 1002(1). The plan is a proper party under 29 U.S.C. § 1132(d)(1).[2] But the plan appears to have no meaningful existence on its own because it does not appear to independently fund payments owed under it. It conducted business in Texas at the time the claims asserted herein accrued and continues to do so, according to its administrative records. It may be served with process through its designated agent for service of process in Texas as follows:

CT Corporation System
1999 Bryan Street
Suite 900
Dallas, Texas 75201

4. Defendant Occidental Petroleum Corporation ("Oxy") is the surviving entity after a merger involving Anadarko Petroleum Corporation ("Anadarko"). Oxy is a proper party under 29 U.S.C. § 1132(d)(2) because the plan expressly renders it independently liable for payments owed to plan participants like Jerry. Among other

---

[1] Although sometimes referred to as the *Amended and Restated Anadarko Petroleum Corporation Change of Control Severance Plan*, the most recent amendments and other administrative materials show that the correct name is the *Anadarko Petroleum Corporation Change of Control Severance Plan.*

[2] 29 U.S.C. § 1132(d)(1) ("An employee benefit plan may sue or be sued under this subchapter as an entity.").





plan provisions that render it liable, its obligation to pay plan benefits as an Anadarko company successor "shall be absolute and unconditional ...."[3]

5. Oxy is a foreign corporation that conducted business in Texas at the time the claims asserted herein accrued and continues to do so, according to Texas Secretary of State records. It maintains its principal office and principal place of business in Texas, according to Texas Secretary of State records. It may be served with process through its designated agent for service of process in Texas as follows:

CT Corporation System
1999 Bryan Street
Suite 900
Dallas, Texas 75201

6. Anadarko Petroleum Corporation Health and Welfare Benefits Administrative Committee (the "committee") is the named plan administrator and exercised control over the plan's benefit claims process.[4] It is a proper party under 29 U.S.C. § 1132(d)(2) and *LifeCare Management Services LLC v. Ins. Management Administrators, Inc.*, 703 F.3d 835, 845 (5th Cir. 2013). Because it is a named plan administrator and exercised actual control over the benefit claims process and benefit decisions.

[3] *See, e.g.,* Plan, p. 14 Article VI (plan binds successors to *company*); p. 14 Article IV § 4.6 (quoted language); p. 5 (definition of *company*).

[4] *See generally* First Plan Amendment (control) & Second Plan Amendment, p. 1 (named plan administrator).





7. The committee conducted business in Texas at the time the claims asserted herein accrued and continues to do so, according to its own administrative records. It may be served with process through its designated agent for service of process in Texas as follows:

CT Corporation System
1999 Bryan Street
Suite 900
Dallas, Texas 75201

8. Plaintiff Jerry Clayton Gift is an individual who resides in Andrews, Andrews County, Texas and did so at the time the claims asserted herein accrued.

**JURISDICTION**

9. The Court has subject matter jurisdiction over this case because (1) Jerry seeks damages within its jurisdictional limits, (2) the asserted claims are not subject to exclusive jurisdiction in another court, and (3) 29 U.S.C. § 1132(e)(1) grants state courts concurrent jurisdiction with federal courts over the claims asserted.

10. The Court has personal jurisdiction over each defendant because, as to each defendant, (1) the claims asserted against it arose directly from its acts and omissions in Texas, and (2) its affiliations with Texas are so continuous and systematic that it is "essentially at home" in Texas.





## VENUE

11. Venue is proper under Texas Civil Practice & Remedies Code § 15.002(a)(1) because a substantial part of the events or omissions giving rise to the claims occurred in Andrews County, Texas. The plan governed, and governs, employees like Jerry who live and work in Andrews County, Texas. The plan was, and is, administered to and for employees like Jerry who work in Andrews County, Texas, among other employees.

12. The following gives us a general idea of the significant number of employees working in Andrews County, Texas. Andrews County, Texas has a significant number of leases for which an Anadarko [predecessor to Oxy] entity is the operator.[5] Below is a first screenshot for activity in Andrews County, Texas:

Leases Operated by Anadarko Production Company

| Lease No. | Lease Name | County | Current Operator | Operation Range | Oil Prod | Gas Prod |
|---|---|---|---|---|---|---|
| 03-044247 | LEHRER -A- | Colorado County | [illegible] | [illegible] | [illegible] | [illegible] |
| 03-048635 | SOUTH TEXAS WATER COMPANY -A- | Brazoria County | [illegible] | [illegible] | [illegible] | [illegible] |
| 03-12955 | TURNER, EDWARD | Harris County | [illegible] | [illegible] | [illegible] | [illegible] |
| 04-068927 | STATE TRACT 81 | Nueces County | [illegible] | [illegible] | [illegible] | [illegible] |
| 04-098113 | DAVIS, RICHARD T. | San Patricio County | [illegible] | [illegible] | [illegible] | [illegible] |
| 05-098113 | DAVIS, RICHARD T. | San Patricio County | [illegible] | [illegible] | [illegible] | [illegible] |
| 08-033019 | U. S. M. OIL COMPANY | Pecos County | [illegible] | [illegible] | [illegible] | [illegible] |
| 08-05549 | FISHER, NOLA | Andrews County | [illegible] | [illegible] | [illegible] | [illegible] |
| 08-05550 | FISHER, NOLA -A- | Andrews County | [illegible] | [illegible] | [illegible] | [illegible] |
| 08-05551 | FISHER, NOLA -C- | Andrews County | [illegible] | [illegible] | [illegible] | [illegible] |
| 08-08337 | FISHER, NOLA -D- | Andrews County | [illegible] | [illegible] | [illegible] | [illegible] |
| 08-09689 | NOLA FISHER "H" | Andrews County | [illegible] | [illegible] | [illegible] | [illegible] |
| 08-20131 | UNIVERSITY -C- | Andrews County | [illegible] | [illegible] | [illegible] | [illegible] |
| 08-23476 | UNIVERSITY "C" | Andrews County | [illegible] | [illegible] | [illegible] | [illegible] |
| 08-24102 | HORWOOD, E. | Sterling County | [illegible] | [illegible] | [illegible] | [illegible] |
| 08-24379 | HORWOOD, E. "B" | Sterling County | [illegible] | [illegible] | [illegible] | [illegible] |
| 08-26269 | MCCABE, J. F. | Mitchell County | [illegible] | [illegible] | [illegible] | [illegible] |

[5] *See* https://www.texas-drilling.com/operators/anadarko-production-company/020582





Oxy is also currently listed for multiple oil and gas properties in Andrews County, Texas.[6]

13. The plan also owes, and must honor, fiduciary obligations to employees like Jerry who work in Andrews County, Texas. The severance benefit communications at issue were directed to or from Andrews County, Texas. And the severance benefits at issue were to be paid in Andrews County, Texas.

## ABBREVIATED FACTUAL BACKGROUND

### Severance Plan

14. The factual recitations under the "parties" section above are incorporated herein and show proper coverage and proper parties under ERISA.

15. Jerry was a participant and beneficiary under the plan at all relevant times concerning the claim for benefits at issue. He remains a plan participant.[7]

*remainder of page intentionally left blank*

[6] *See* https://www.shalexp.com/texas/andrews-county/university/901639

[7] *See* Plan, p. 8 Article III § 3.2 (a participant entitled to benefits under plan remains a participant until all separation benefits are paid).





***basic purpose, structure, and coverage***

16. The plan's purpose appears to be (1) to prevent a mass exodus of employees in the event of a looming or possible change of control, like sale or merger, and (2) to encourage focus on work [and not change in control or fear of the future] in the event of a looming or possible change of control, like sale or merger.[8] Otherwise, employee exodus or lack of focus might impede, or prevent altogether, any desired sale, merger, or similar event.

17. The plan promises separation benefits for certain employment separations that take place within a certain time frame after a change in control.[9]

18. The committee, on behalf of the plan, concedes that a change of control occurred with a merger involving Anadarko. The merger left Oxy as the surviving entity that had acquired Anadarko. This acquisition was completed on or about August 8, 2019, according to an Oxy press release.

19. None of the defendants has ever disputed that Jerry met all time frames needed to obtain benefits under the plan.

20. None of the defendants has ever disputed that Jerry met all eligibility requirements needed to qualify as a participant and seek benefits under the plan.

[8] *See generally* Plan, p. 1 § Introduction.

[9] *See, e.g.,* Plan Article IV § 4.1 ("A Participant shall be entitled to receive separation benefits as provided in Section 4.3 if a Change of Control occurs and his or her Employment terminates under a circumstance specified in Section 4.2(a).").





***benefits owed if participant quits for "good reason"***

21. The plan promises certain payments if [upon a change in control and thereafter during a set time period, which defendants concede] a participant ends her or his employment for *good reason*.

22. Good reason includes:

> (vi) the Participant is required, without the Participant's prior written consent, to perform in a job position, or a substantial job assignment, for which he or she is not skilled or trained.

23. So, after change in control, the plan requires separation benefits in this situation, even if the participant has the intellectual bandwidth to accomplish new training or develop new skills. The plan takes a snapshot of existing *skill* and *training* at the time of the job assignment [or job position].

**Oxy: Post-Merger Blues**

24. After the change in control, Oxy faces financial pressures, plunging oil prices, and many who question the wisdom of the Anadarko acquisition. Per *Forbes*:

> Oxy stole Anadarko out of from under Chevron [] at the end of their hugely expensive bidding war. But even at the time, most analysts questioned the wisdom of acquiring so much additional debt — including an infusion of $10 billion from Warren Buffet — to pay a premium price for Anadarko and its assets.[10]

[10] David Blackmon, *Oxy Struggles To Cope With The Impacts Of Its Acquisition Of Anadarko*, FORBES (Aug. 11, 2020).





25. Around six months after the merger, the pandemic hits, oil prices crater [down to *negative* $37.63 a barrel], and "the specter of layoffs loomed."[11] "Oxy stock, worth $47 a share in January [2020], had dropped by March 9 [2020] to about $12 and would stay in that cold, dark nether region for months."[12]

26. In this atmosphere, Oxy is not keen to paying overtime wages. Nor is it keen to replacing employees who quit.

**Good Reason**

27. Jerry worked as an *operations foreman*. In the month after the Oxy stock drop of almost 75%, the *procedure writer* quit. Rather than fill this now-vacant position, management requires Jerry to take on *procedure writer* job duties on top of his existing duties as operations foreman. But Jerry has no training or skills as a procedure writer.

28. Not long after that, there's another employee-fill issue. Management does not want to pay overtime "at all" to its Control Center operators. But it must have someone cover the duties of Control Center operators when those operators are absent, such as for paid time off or medical leave. Management tells Jerry that, on top of his duties as operations foreman, he is expected to fill 12-hour shifts for absent

[11] *See* Mimi Swartz, *How the Most Hyped U.S. Oil Merger in a Decade Went Bust*, TEXAS MONTHLY (Feb. 2021).

[12] *Id.*





Control Center operators. But Jerry has no training or skills as a Control Center operator or as an employee working in the Control Center.

29. The lack of training and skills — for the substantial job assignments of *procedure writer* and *Control Center operator* — is sufficiently stark as to create foreseeable safety problems. Especially since Jerry must still perform his existing duties as operations foreman. Management ignores his concerns.

30. So, shortly thereafter, Jerry resigns for good reason within the meaning of the plan. Because he was required, without his prior written consent, to perform substantial job assignments [and, frankly, additional job positions] for which he was not skilled or trained. Jerry timely files a claim for benefits under the plan. The claim is denied.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

31. Jerry timely appealed the benefit denial and timely exhausted all administrative remedies under the plan. The committee, on behalf of the plan, issued its final decision on his appeal in a letter dated April 22, 2021. It denied benefits under the plan. The letter said it was the final decision under the plan's claim-and-appeal procedures and triggered the right to file suit. Jerry timely filed this suit.





**CLAIM FOR RELIEF:**
**ERISA 29 U.S.C. § 1132**

32. Jerry incorporates herein the allegations set forth in prior paragraphs.

33. Jerry brings his claims pursuant to 29 U.S.C. § 1132(a)(1)(B) to recover benefits due to him under the plan and to enforce his rights under that plan. The committee abused its discretion in denying benefits under the plan. It abused its discretion both as to plan interpretation and factual determinations. Jerry has suffered harm as a result. Oxy is independently liable for the harm under the terms of the plan. The committee is also liable for the harm under Fifth Circuit precedent.

34. Claim administrators, like the committee, owe fiduciary duties to participants, like Jerry, when handling benefit claims. Those fiduciary duties constrain the discretion of a claim administrator, even when a plan grants discretion to interpret the plan and make factual determinations. For example, the committee must discharge its duties with respect to the plan solely in the interest of participants such as Jerry. So, it has zero discretion to discharge its duties with respect to the plan in its own interest or the interest of Oxy.

35. Similarly, the committee has no discretion to consider less than all comments, documents, records, and other information submitted by the claimant. It must construe information in an accurate and unbiased manner. It has zero discretion to construe information in an inaccurate manner or in a biased manner.





36. The committee must tell the truth about important facts. It must tell the truth about the plan terms. It has no discretion to lie about or skew important facts. It has no discretion to lie about or skew the plan terms. And it has zero discretion to focus on reasons to deny benefits while largely ignoring or minimizing the evidence and reasons to pay benefits.

37. The committee must follow the terms of the plan. It has no discretion to require a claimant like Jerry to establish more than the plan terms require. It has no discretion to add plan terms or additional requirements that do not exist.

38. The committee must also provide full and fair review of benefit claims. It has no discretion to provide less than full and fair review. And full and fair review requires, among other things, "a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary."

39. Full and fair review also prohibits the claim administrator from offering new reasons for denial in the final denial letter on appeal. *See Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389 (5th Cir. 2006). Because doing so deprives the claimant of a full and fair chance to address those reasons.





40. The committee violated all the above rules. It also operated under a conflict of interest. And it has a history of abuses when it comes to this plan, based on allegations in other lawsuits about the illegal denial of benefits under this plan. The abuses and procedural violations are so severe that the Court may find *de novo* review appropriate. But in any event, all the abuses and procedural violations show abuse of discretion.

### Incomplete Administrative Record and Scope of Review

41. The administrative record in this case is incomplete. Additionally, the scope of review should be open to some additional evidence because the committee based its final denial on a new reason. Information exclusively in its possession that it had never disclosed to Jerry. As a result, it did not give Jerry full and fair review. And Jerry had no opportunity to respond to the new basis for denial.

### Attorneys' Fees

42. As a result of the unlawful conduct described above, Jerry hired undersigned counsel to represent him in pursuing this case. He seeks to recover reasonable attorneys' fees and costs in connection with this case, including all appeals, pursuant to 29 U.S.C. 1132(g)(1).

### Conditions Precedent

43. All conditions precedent to filing suit and to recovery on the asserted claims have occurred, been performed, or been waived.





## Remedies Requested

44. Plaintiff Jerry Clayton Gift respectfully requests that the Court render judgment in his favor on all claims and against all defendants, jointly and severally, including but not limited to the following:

A. judgment for benefits due under the plan,

B. judgment enforcing his rights under the plan,

C. judgment granting injunctive relief against future violations,

D. reasonable attorneys' fees and costs,

E. pre-judgment and post-judgment interest as allowed by law,

F. other appropriate legal or equitable relief as the Court deems appropriate.

Respectfully submitted,

**GOSSETT, HARRISON, MILLICAN & STIPANOVIC, P.C.**

P.O. Drawer 911
San Angelo, Texas 76902
T: (325) 653-3291
F: (325) 655-6838
E-mail: paulm@ghtxlaw.com

By: /s/ PAUL H. MILLICAN
**Paul H. Millican**
Texas State Bar No. 14146700

*Attorneys for Plaintiff Jerry Clayton Gift*

DISTRICT COURT OF ANDREWS COUNTY
THE STATE OF TEXAS
COUNTY OF ANDREWS
I, Sherry Dushane, Clerk of the District Court of Andrews County, Texas, do hereby certify that the foregoing is true and correct copy.
GIVEN UNDER MY HAND AND SEAL OF SAID COURT
this 19 day of May A.D., 2022
SHERRY DUSHANE, District Clerk, Andrews County, Texas
By



